1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10         SOUTHERN DISTRICT OF CALIFORNIA
11

12  KEVIN KHWAJA, an individual and        Case No.: 3:23-cv-00717-JO-SBC
    ISHA DEEN, an individual,
13                                          **PARTIAL ORDER ON CROSS-
                            Plaintiffs,     MOTIONS FOR SUMMARY
14                                          JUDGMENT**
    v.
15
    FEDERAL INSURANCE COMPANY,
16  an Indiana Corporation, and Does
    1through 50, inclusive,
17
                            Defendants.
18
19
20

21         Plaintiffs, Kevin Khawaja and Isha Deen ("the Deens"), had a personal injury

22  liability policy with Defendant Federal Insurance Company ("Federal").  After Federal

23  declined to represent the Deens in two separate state lawsuits, the Deens brought suit

24  alleging that Federal improperly refused coverage.  Dkt. 1.  The parties filed cross-motions

25  for summary judgment contesting whether Federal had a duty defend the Deens in the state

26  lawsuits and as a result whether Federal breached its contract with the Deens and breached

27  the covenant of good faith and fair dealing.  Dkts. 23 ("Def.'s Mot. Summ. J."), 24 ("Pl.'s

28  Mot. Summ. J.").  For the reasons provided below, the Court grants in part and denies in

part Plaintiffs' motion for summary judgment and grants in part and denies in part Defendant's motion for summary judgment.

# I. BACKGROUND

This coverage dispute arises from two separate state lawsuits accusing the Deens of committing various intentional torts.  In the first action, *Deen v. Deen*, 37-2016-00022636-CU-OR-NC, Isha's father, Chodry, and sisters, Sana and Sidrah, (the "In-Laws") alleged that the Deens falsely imprisoned and defamed them in an attempt to steal the In-Laws' property rights.  Dkt. 23-3 ("Def.'s Ex. B").  In the second case, *Deen v. Fitzgerald Yap Kreditor LLP*, 37-2021-00015644-CU-FR-NC, the Deens' former law firm, Fitzgerald Yap Kreditor, LLP, accused the Deens of filing multiple unfounded lawsuits against the firm in a bad faith campaign to avoid paying their legal fees.  Dkt. 23-8 ("Def.'s Ex. G").  The Deens requested that Federal, their primary insurance company, cover their legal defense in these two cases pursuant to its third-party liability coverage.  Dkt. 23-17 ("Def.'s Ex. N").  However, Federal refused to provide representation in the two cases for multiple reasons,[1] Dkts. 24-18, 24-19, 24-21, 24-23, including an "intentional acts" exclusion in its policy that barred coverage for acts intended to cause harm.  Def.'s Ex. N at 44.  As a result, the Deens allege that Federal breached its contract by failing to defend them in these two cases as well as breached the covenant of good faith and fair dealing.  Dkt. 1.

## A. The Underlying Lawsuits

### 1. *Deen v. Deen*

In *Deen v. Deen*, the Deens and the In-Laws contest who is the rightful owner of a property located at 17911 El Brazo, Rancho Santa Fe, California (the "El Brazo house").  On July 5, 2016, the Deens filed a state court action against the In-Laws alleging that the In-Laws filed false deed documents to take ownership of the El Brazo house.  Dkt. 23-2 ("Def.'s Ex. A").  In response, on August 19, 2016, the In-Laws filed crossclaims against

---

[1] The Court addressed Federal's other grounds for refusing coverage during its August 21, 2024 hearing.  Dkt. 47.

the Deens.  Def.'s Ex. B.  The In-Laws, in turn, alleged that the Deens tried to pressure the In-Laws into transferring the deed by holding them captive, physically brutalizing and threatening them, and ultimately, defaming them to their neighbors.  *Id.*

In their cross-complaint, the In-Laws detailed how the Deens attempted to steal the deed to the El Brazo house by abusing their trust.  *Id.* at 6–10.  According to the In-Laws' complaint, the family conflict first began when the In-Laws requested that Isha, as her father's power of attorney, register the deed to the El Brazo house in their names.  *Id.* at 6–8.  In response, Isha allegedly lied to the In-Laws and claimed ownership of the El Brazo house by putting the deed in her own name.  *Id.* at 8–9.  The In-Laws claimed that when they discovered Isha's lies and confronted her, she pled ignorance and promised to execute a new deed that would transfer the property to Chodry.  *Id.* at 9–10.  When the In-Laws later discovered that Isha had not kept this promise, Chodry announced that he would record the deed himself to ensure that it was properly registered in his own name.  *Id.* at 10.

In order to prevent Chodry and Isha's sisters from reclaiming the deed, the Deens allegedly confined the In-Laws in the El Brazo house and subjected them to threats and violence.  *Id.* at 10–11.  The In-Laws asserted that during their confinement of seven days, the Deens did the following: (1) physically struck them; (2) threatened that Kevin's brothers and other family members would rape Isha's sisters; (3) threatened to kill the In-Laws if they left the El Brazo house, called the authorities, or attempted to have the deed recorded; (4) threatened to have them arrested by making false accusations of car theft, forgery, and false impersonation; (5) threatened to publish defamatory material against Sana and Sidrah if any of the In-Laws left the El Brazo house, called the authorities, or attempted to have the deed recorded; (5) withheld medication from Chodry and Sidrah; (6) forced Sana to transfer $150,000 of her personal funds into an account that the Deens could access; (7) threatened to have Kevin's fundamentalist relatives move in, take over the house, and use the house for illegal activities; (8) patrolled the house with firearms to intimidate the In-Laws; and (9) used a kitchen knife to attack them.  *Id.*  The In-Laws

alleged that they were only able to end this abuse by calling the police and obtaining a restraining order against Kevin.  *Id.* at 11.

After leaving the El Brazo house, the Deens allegedly continued to harass and defame the In-Laws.  *Id.* at 11–14.  The In-Laws contended that after they were released, they were ultimately able to record the grant deed and claim ownership of the El Brazo house.  *Id.* at 12.  Purportedly, the Deens, in turn, threatened, intimidated, and pressured the In-Laws to transfer the grant deed back to them and to drop the charges against Kevin. *Id.*  To achieve these goals, the Deens allegedly threatened to make false criminal accusations against the In-Laws, surveilled their house, and interfered with their internet, security, and telephone and mail service.  *Id.*  The In-Laws also claimed that as a means to pressure them to surrender the deed to the El Brazo house, the Deens knowingly made false and offensive comments to the In-Laws' neighbors, family friends, and community members about their education, income, relationships, health histories, and ownership rights of the El Brazo house and other properties.  *Id.* at 12, 28–29.  Moreover, Kevin also purportedly broke into the El Brazo house and attacked Isha's father, causing him injury and leading to Kevin's second arrest and a second restraining order.  *Id.* at 12.  Finally, the In-Laws alleged that the Deens threatened them in an attempt to prevent them from pursuing their crossclaims and attending state court hearings.  *Id.* at 13.

Based on these allegations, the In-Laws brought claims of assault, battery, false imprisonment, physical elder abuse, defamation, and intentional infliction of emotional distress in addition to claims of quiet title, slander of title, breach of contract, fraud, breach of fiduciary duty, and conversion.  *See generally* Def.'s Ex. B.

### 2. *Deen v. Fitzgerald Yap Kreditor LLP*

The *Deen v. Deen* litigation also gave rise to the second lawsuit at issue in this case, *Deen v. Fitzgerald Yap Kreditor LLP*.  In this secondary lawsuit, the Deens and a law firm that represented them in *Deen v. Deen*, Fitzgerald Yap Kreditor LLP ("FYK"), contested the quality of the law firm's services and whether outstanding legal fees were owed.  On April 7, 2021, Isha filed suit against FYK, alleging that the firm failed to adequately defend

them, incurred unnecessary litigation costs, and falsified expenses.  Dkt. 23-7 ("Def.'s Ex. F") at 5–8.  On July 12, 2021, FYK filed a cross-complaint against Isha and Kevin, alleging that the Deens failed to pay their bill and engaged in bad-faith litigation proceedings against the firm in an attempt to evade paying such costs.[2]  Def.'s Ex. G.

In her original complaint against FYK, Isha alleged that she and Kevin were forced to bring multiple legal actions against FYK in order to get back the money they were owed.  Def.'s Ex. F at 7–10.  Specifically, she contended that she filed an application for a Mandatory Fee Arbitration in order to obtain a refund from FYK.  *Id.* at 7–8.  However, she asserted that because FYK botched the arbitration process, that she and Kevin had no choice but to a file a form complaint in state court against the firm.  *Id.*  Because of FYK's purported dilatory conduct in *Deen v. Deen*, she and Kevin also filed a complaint to the state bar.  *Id.*  Moreover, she alleged that due to FYK's alleged malfeasance and exorbitant legal costs, she and Kevin were forced to file for Chapter 13 reorganization in bankruptcy court, listing FYK as a creditor.  *Id.* at 8.  In sum, Isha alleged that the Deens had taken these measures to (1) prevent FYK from abusing the legal process, (2) confront the firm's lies and malpractice, and (3) collect the money they were owed.  *Id.* at 4–8.  On these grounds, Isha sued FYK for breach of fiduciary duty, violation of the Fair Debt Collection Act, fraud, breach of contract, abuse of process, injunctive relief, professional negligence, discrimination, breach of the implied covenant of good faith and faith dealing, and conversion.  *See generally* Def.'s Ex. F.

In turn, FYK's cross-complaint alleged that the Deens not only failed to meet their payment obligations under the contract but also cost the law firm significant expenses in responding to their ill-founded legal actions.  Def.'s Ex. G.  Contrary to the Deens' accusations, FYK claimed that the firm provided excellent representation and that all fees

---

[2] FYK filed a first amended cross-complaint against the Deens on April 7, 2021.  Dkt. 24-22.  However, as the factual allegations are practically identical between the complaints, the Court refers to FYK's first complaint.

and costs incurred were reasonable and necessary in light of the complex nature of the case. *Id.* at 4–12.  FYK contended that despite their well-deserved fees, the Deens refused to pay their legal bills and resorted to initiating bad-faith litigation to evade paying.  *See generally* Def.'s Ex. G.  For these reasons, FYK filed suit against the Deens for breach of contract, breach of the implied covenant of good faith and fair dealing, and common counts for services rendered, seeking damages both for the legal costs owed by the Deens and for the expenses incurred in attempting to compel the Deens to pay their debts.  *See id.*

In support of its claims, FYK provided a detailed account of the Deens' purported bad-faith legal actions.  *Id.* at 12–16.  Specifically, FYK alleged that the Deens engaged in a campaign of bad-faith litigation by willfully misusing the arbitration process and judicial system and further accused the Deens of acting "with a willful and knowing disregard of the rights of FYK [with] clear[] inten[t] to cause harm to FYK and its attorneys."  *Id.* at 12–13, 17.  Accordingly, FYK cited the following legal actions as evidence of the Deens' bad behavior: the Deens purportedly (1) applied for Mandatory Fee Arbitration before the San Diego County Bar Association despite knowing that FYK's attorneys were not members; (2) petitioned for a new Mandatory Fee Arbitration hearing by challenging the judge's neutrality and FYK's ethics; (3) petitioned for the removal of the Mandatory Fee Arbitration from the San Diego County Bar Association to the State Bar of California; (4) filed a civil action in Orange County Superior Court but failed to serve FYK's attorneys or notify the San Diego County Bar Association; (5) filed for bankruptcy under Chapter 13, listing FYK as a creditor; (6) objected to FYK's request for arbitration before JAMS and later delayed such arbitration by producing a false retainer agreement; (7) filed a petition in San Diego Superior Court to stay the JAMS arbitration on account of the judge's neutrality and thereafter, moved ex parte to enforce the stay without informing FYK; (8) applied ex parte for a temporary restraining order against Eoin Kreditor, an attorney with FYK; and (9) filed a complaint in San Diego Superior Court raising the same claims as those at issue here.  *Id.* at 12–16.  FYK also noted that many of the above actions were either dismissed or withdrawn, demonstrating their frivolous and meritless nature.  *Id.*

**B. Federal's Insurance Policy & Coverage**

The Deens requested coverage for these lawsuits invoking Federal's liability for third-party lawsuits.  The Deens' insurance policy with Federal specifically stated that it would "cover damages a covered person is legally obligated to pay for personal injury or property damage, which takes place anytime during the policy period and are caused by an occurrence, unless stated otherwise or an exclusion applies." Def.'s Ex. N. at 30.  It defined an "[o]ccurrence" as "an accident" or "an offense first committed within the policy period resulting in: false arrest, false imprisonment, or wrongful detention; wrongful entry or eviction; malicious prosecution or humiliation; or libel, slander, defamation of character, or invasion of privacy, to which this insurance applies." *Id.*  Critically, the policy stated, "[w]e will defend a covered person against any claim or suit seeking covered damages for personal injury or property damage." *Id.* at 35.

This policy also included an "[i]ntentional acts" exclusion barring coverage for allegations involving willfulness, maliciousness, fraudulence, dishonesty, or intent to injure. *Id.* at 44.  The exclusion explicitly stated:

> We do not cover any damages arising out of a willful, malicious, fraudulent or dishonest act or any act intended by any covered person to cause personal injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected. But we do cover such damages if the act was intended to protect people or property unless another exclusion applies. An intentional act is one whose consequences could have been foreseen by a reasonable person.

*Id.* at 44.

Invoking this policy, the Deens requested that Federal represent them in the two above state lawsuits, but the insurance company declined to provide coverage.  With respect to *Deen v. Deen*, Federal (after some initial back and forth) eventually took the position that coverage was barred due to its intentional acts exclusion. Dkts. 24-18, 24-19, 24-21.  After initially offering coverage for *Deen v. Fitzgerald Yap Kreditor LLP*, Federal later notified the Deens that it would not be defending them in the case on the grounds that

7

this action only involved contractual claims that were not covered as opposed to personal injury claims which were.  Dkts. 24-23.

**C. Procedural History**

On April 19, 2023, the Deens sued Federal[3] for failing to defend them in the two above lawsuits.  Dkt. 1.  Specifically, in their complaint, the Deens alleged that Federal breached the terms of their contract and the covenant of good faith and fair dealing in refusing to cover their legal representation in *Deen v. Deen* and *Deen v. Fitzgerald Yap Kreditor LLP*.

In February 2024, both the Deens and Federal filed cross-motions for summary judgment.  *See* Pl.'s Mot. Summ. J.; Def.'s Mot. Summ. J.  The Deens moved for partial summary judgment, seeking declaratory relief that Federal had a duty to defend them in these two lawsuits.  Pl.'s Mot. Summ. J.  Federal, on the other hand, moved for summary judgment against all of the Deens' causes of action.  Def.'s Mot. Summ. J.  On August 21, 2024, the Court issued its partial ruling on the parties' cross-motions for summary judgment on the record and released a subsequent written order resolving all issues except for whether the intentional acts exclusion in Federal's policy bars coverage for the defamation and false imprisonment claims in *Deen v. Deen*, and the possible malicious prosecution claim[4] in *Deen v. Fitzgerald Yap Kreditor LLP*.  *See* Dkts. 47, 48, 49.  After this order, the parties filed supplemental briefing on this matter.  Dkts. 56, 59.  The following order addresses the remaining issue of the intentional acts exclusion in both the above cases.

---

[3] The Deens also sued DOES 1-50, which they claim are entities, whether individual, corporate, or otherwise, who are legally responsible in some manner for the events.  Dkt. 1.  As the Deens still have not identified these alleged defendants, the Court need not address them.

[4] The Court ruled that while FYK's claims were styled as contractual claims, the factual allegations could also support malicious prosecution claims.  Dkt. 47.  Because a court must look to the facts of the claim, rather than how the party styles their causes of actions, *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005), the Court found in its previous ruling that the FYK complaint raised the possibility of a malicious prosecution claim.  *Id.*

## II. LEGAL STANDARD

**A. Motion for Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248–50.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proof at trial. *Id.* at 322–23. The moving party may also satisfy its initial burden by demonstrating that the opposing party lacks sufficient evidence from which a jury could find an essential element of the opposing party's claim. *Id.* at 325; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F. 3d. 1099, 1102 (9th Cir. 2000).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 324. The nonmoving party cannot merely rest on his pleadings, but must direct the court to specific, triable facts by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see Anderson*, 477 U.S. at 250. The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

**B. Insurance Coverage Cases**

In insurance coverage cases, the summary judgment standard operates in a distinct fashion given how it intersects with the substantive law on insurance defense.

Liability insurers generally owe a broad duty to defend their policy holders. *See Gonzalez v. Fire Ins. Exch.*, 234 Cal. App. 4th 1220, 1229 (2015). Accordingly, a carrier must defend a suit if the allegations allow for the possibility of coverage. *See id.* (internal citation omitted). "The determination [of] whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Id.* (internal citation omitted). "Facts extrinsic to the complaint also give rise to a duty to defend when they reveal the possibility that the claim may be covered by the policy." *Id.* (internal citation omitted). Critically, the duty to defend does not turn on the truth of the allegations or the merits of the claimant's case, but rather on whether the allegations, when coupled with extrinsic evidence, potentially allow for coverage. *Allstate Ins. Co. v. Barnett*, No. C-10-0077 EMC, 2010 WL 3619778, at *6 (N.D. Cal. Sept. 9, 2010).

"This legal framework shapes a party's burden when seeking summary judgment." *Gonzalez*, 234 Cal. App. 4th at 1229. To warrant summary judgment, an insured need only prove the existence of a *potential for coverage* to demonstrate that the insurer had a duty to defend. *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 300 (1993) (emphasis in original). If the insured can show that the "underlying complaint alleges the insured's liability for damages potentially covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy," the insured has met its burden. *Id.* at 299. Accordingly, if an insured can establish a genuine issue of material fact as to whether coverage is feasible given the allegations and any extrinsic facts known to the insurer, it will prevail. *Id.*

On the other hand, for an insurer to obtain summary judgment, an insurer must show that no reasonable juror could find coverage possible in order to eliminate the duty to defend. *Id.* at 301. To prevail at the summary judgment stage, the insurer must eliminate the possibility of coverage either by showing that the allegations raised preclude the possibility of coverage or by demonstrating that undisputed facts and conclusive evidence bar any coverage. *All Green Elec., Inc. v. Sec. Nat'l Ins. Co.*, 22 Cal. App. 5th 407, 412–14 (2018). If an insurer can prove that it did not owe a duty to defend as a matter of law, it likewise meets its burden to prove that it neither breached its contractual obligations to the insured nor breached the covenant of good faith and fair dealing. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 35 (1995), *as modified on denial of reh'g* (Oct. 26, 1995).

### III. DISCUSSION

As the Court has already ruled that the terms of Federal's policy otherwise allow for the possibility of coverage in both *Deen v. Deen* and *Deen v. Fitzgerald Yap Kreditor LLP*, its analysis below will exclusively focus on whether the intentional acts exclusion specifically bars coverage. After evaluating whether Federal had a duty to defend the Deens in these two actions, the Court will then examine whether Federal has met its burden to prove that it did not breach its contract or the covenant of good faith and fair dealing as a matter of law.

### A. Whether the Intentional Acts Exclusion Bars the Duty to Defend

The Court must examine whether the intentional acts exclusion bars coverage for the defamation and false imprisonment claims in *Deen v Deen* and the potential malicious prosecution allegations in *Deen v. Fitzgerald Yap Kreditor LLP*.[5]

Under insurance law, exclusions against coverage are construed narrowly and the insurer bears the burden of proving their application. *Waller*, 11 Cal. 4th at 16. In assessing

---

[5] The Deens do not contend that Federal had a duty to defend on any of the other causes of action raised in *Deen v Deen*. *See* Pl.'s Mot. Summ. J. While the Deens argued that Federal had a duty to defend them in *Deen v. Fitzgerald Yap Kreditor LLP* on the basis that the cross-complaint raised a defamation claim, the Court rejected this argument in its August 21, 2024 decision. Dkt. 47.

whether the facts and claims alleged against the insured are precluded by the exclusion, the insurer must show that the exclusion applies in "all possible worlds," bearing in mind the possibility that complainants can amend their pleadings. *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1039 (2002).

However, an insurer will not have a duty to defend where coverage is effectively infeasible given the allegations in the complaint. This is because "an insurance company has the right to limit the coverage of a policy [it issues] and when it has done so, the plain language of the [policy] must be respected." *Cont'l Cas. Co. v. Phoenix Constr. Co.*, 46 Cal. 2d 423, 432 (1956). Thus, if the "third party complaint can by no conceivable theory bring it within the policy coverage," an insurer will be relieved of its duty to defend. *All Green*, 22 Cal. App. 5th at 414. In assessing whether there is such a "conceivable theory," an insured is not free "to manufacture hypothetical scenarios beyond those encompassed by the pleadings or the facts known to the insurer." *Id.* at 414, 417. Rather, coverage must be feasible given the facts alleged by the plaintiff in the complaint and any other extrinsic facts known to the insurer at the inception of the lawsuit. *Id.*; *see Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263 (1966) (finding that an intentional torts exclusion did not bar coverage because the allegations allowed for the possibility that the insured acted negligently or in self-defense); *Vann v. Travelers Companies*, 39 Cal. App. 4th 1610, 1612–16 (1995) (same). Critically, "[w]here a policy clearly excludes coverage, [courts] will not indulge in tortured constructions to divine some theoretical ambiguity in order to find coverage." *Titan Corp. v. Aetna Cas. & Sur. Co.*, 22 Cal. App. 4th 457, 469 (1994). If the insurer can prove that the insured would have to plead entirely new, different facts to evade the exclusion, it has effectively established that there is no conceivable theory of coverage. *All Green*, 22 Cal. App. 5th at 418.

If the allegations in the complaint permit coverage even with the exclusion, an insurer can only be freed of the duty to defend if conclusive evidence proves that there is absolutely no potential for coverage. *Id.* 412–13. In such circumstances, the insured must point to undisputed facts extrinsic to the allegations. *Vann*, 39 Cal. App. 4th at 1614–15.

However, if this evidence does not "eliminate the possibility of potential coverage, but instead merely places in dispute whether one or more of the exclusions contained in the policies apply," the insurer has not met its burden. *Id*. at 1615 (internal citation and quotation marks omitted). This principle recognizes that insurers have a burden to investigate claims and thus have the responsibility to provide conclusive evidence demonstrating the absence of coverage if they wish to be relieved of their duties. *Dua v. Stillwater Ins. Co.*, 91 Cal. App. 5th 127, 137 (2023), *review denied* (July 12, 2023).

Here, in determining whether Federal has a duty to defend, the Court must first review the language of its intentional acts exclusion and then assess whether it bars coverage in either *Deen v. Deen* or *Deen v. Fitzgerald Yap Kreditor LLP*. Federal's insurance policy explicitly states:

> We do not cover any damages arising out of a willful, malicious, fraudulent or dishonest act or any act intended by any covered person to cause personal injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected. But we do cover such damages if the act was intended to protect people or property unless another exclusion applies. An intentional act is one whose consequences could have been foreseen by a reasonable person.

Def.'s Ex. N. at 44.

California courts have interpreted intentional acts exclusions, like the one above, as barring coverage of acts that the insured subjectively intended to or likely knew would cause harm. *Mullen v. Glens Falls Ins. Co.*, 73 Cal. App. 3d 163, 171 (1977) (holding that intentional acts exclusions only "exclude from coverage injuries and damages resulting from acts involving an element of wrongfulness or misconduct" even if the "acts otherwise are performed intentionally"). Provisions that exclude coverage for "willful, malicious, fraudulent or dishonest act[s]" or acts intended to cause harm are treated identically to Insurance Code Section 533, which establishes "that an insurance company is not liable for a loss caused by a wilful act of the insured." *Delgado v. Interinsurance Exch. of Auto. Club of S. California*, 47 Cal. 4th 302, 313–14 (2009). Under this standard, an insured

only acts intentionally if he or she "knew or believed [his] conduct was substantially certain or highly likely to result in that kind of damage" or "with preconceived design to inflict injury." *Gonzalez*, 234 Cal. App. 4th at 1239 ("[I]t is the insured's subjective belief as to whether his or her conduct would cause the type of damage claimed that excludes coverage."). Courts usually find a possibility of coverage despite intentional acts exclusions given the possibility that the insured may have committed these alleged intentional acts by being "reckless or negligent." *KM Strategic Mgmt., LLC v. Am. Cas. Co. of Reading PA*, 156 F. Supp. 3d 1154, 1170–71 (C.D. Cal. 2015) (citing J. Croskey, et al., Cal. Prac. Guide: Ins. Lit. at ¶ 7:1066.2 (Rutter 2014)). Thus, allegations of false imprisonment or slander, which necessarily involve *intentional* conduct do not necessarily involve an intent to cause harm. *Id.* at 1239–40.

Critically, in assessing whether these exclusions apply, courts must examine the general factual situation alleged in the complaint, looking beyond the allegations directly tied to the covered injury, to assess whether there is a possibility that the insured acted without the intent to cause harm. *Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 128 (1996). If the allegations are "inseparably intertwined" with the intent to cause harm, an insurer does not have a duty to defend. *Jane D. v. Ordinary Mutual*, 32 Cal. App. 4th 643, 652–53 (1995).

### 1. *Deen v. Deen*

Applying the above standard, the Court must examine whether the factual allegations in the In-Laws' cross-complaint allow for the possibility that the Deens committed false imprisonment or defamation recklessly, negligently, or out of self-defense or whether they necessarily involved the intent to cause harm.

Here, Federal did not have a duty to defend the Deens because the In-Laws' defamation and false imprisonment allegations are premised on and intertwined with the Deens' intent to cheat and injure their relatives. *See generally* Def.'s Ex. B. In their crossclaims, the In-Laws asserted that all of the Deens' actions were driven by their desire to steal the In-Laws' property rights to the El Brazo house. *Id.* The In-Laws contended

14

that the Deens decided to confine them in the house for seven days *because* they did not want Chodry to record the deed in his name. *Id.* at 6–11, 25–26. According to the In-Laws' allegations, the Deens only subjected the In-Laws to false imprisonment in order to pressure them into relinquishing their rights to the property. *See id.* Moreover, after Kevin was arrested for imprisoning and threatening the In-Laws, the Deens then purportedly continued to harass and defame them in a campaign to get them to drop the charges against Kevin and surrender their rights to the El Brazo house. *Id.* at 12. The In-Laws' false imprisonment and defamation claims are therefore "inseparably intertwined" with their allegations of the Deens' dishonest and wrongful intent to cheat them out of their house and evade criminal charges. *See Jane D.*, 32 Cal. App. 4th at 652–53. Given that the In-Laws explicitly asserted that the Deens' actions were designed to cause these specific harms, the cross-complaint precludes the possibility that the Deens acted negligently, recklessly, or in self-defense. *See KM*, 156 F. Supp. 3d at 1170. As significant portions of the In-Laws' cross-complaint would have to be removed to evade Federal's intentional acts exclusion, the Court finds that there is no conceivable theory of coverage here. *All Green*, 22 Cal. App. 5th at 418.

In addition to alleging that the Deens acted in furtherance of their malicious scheme, the In-Laws pled facts that, by their very nature, exclude the possibility that the Deens acted with benign intentions. The In-Laws explicitly alleged that the Deens carried out their false imprisonment scheme by physically attacking them, withholding their medication, robbing them, patrolling the house with firearms, and threatening to rape and kill them. Def.'s Ex. B at 10–11, 25–26. These are not actions that can be taken without the intent to cause harm. While one can make physical contact with another person either negligently or recklessly without the intent to injure, it defies reason that one could coerce and imprison through a campaign of physical violence, intimidation, withholding medication, and threats of sexual violation without intending to cause harm. *See All Green*, 22 Cal. App. 5th at 414.

The same reasoning applies to the In-Laws' defamation allegations. The In-Laws

did not merely assert that the Deens lied about their ownership of the El Brazo home—actions that could be ascribed to the Deens' genuine belief that the home belonged to them. Def.'s Ex. B at 12, 28–29. Instead, they specifically contended that the Deens falsely denigrated the In-Laws with respect to private and personal matters entirely unrelated to their home ownership dispute, such as their education levels, income, relationships, and health histories. *Id.* In other words, not only did the In-Laws explicitly assert that the Deens spread false information in order to blackmail them into doing their bidding, but they also alleged actions—humiliating them with rumors about their education, heath, and relationships—that could not possibly have a benign purpose. *See id.* Short of rewriting the In-Laws' complaint, these allegations leave no room for the possibility that the Deens were acting for any reason but to cause harm.[6] *See All Green*, 22 Cal. App. 5th at 418.

The facts of this case stand in stark contrast to those where courts have found that coverage was possible despite an intentional acts exclusion. In *Gray v. Zurich Ins. Co.*, the Supreme Court of California concluded that an intentional acts exclusion did not relieve the insurance provider of its duty to defend. 65 Cal. 2d at 276. Even though the complaint at issue in *Gray* alleged that the insured "wilfully, maliciously, brutally and intentionally assaulted" the claimant, the court reasoned that the combination of the complaint's likely overstatement of the facts and the insured's insistence that he acted in self-defense allowed for the possibility that the insured acted without the intent to cause harm. *Id.* at 267, 276–77; *see also Vann*, 39 Cal. App. 4th at 1612–16 (finding that allegations that the insured "improperly handled and disposed of" various hazardous substances did not preclude the possibility that the substances were released accidentally in light of the complaint's vague

---

[6] The Deens insist that these allegations allow for the possibility that they intended to "defend property" which is a permissible form of intent under Federal's policy. Dkt. 59. The Court disagrees. Given the allegations waged here, it is inconceivable that the Deens' actions were only driven by their desire to protect their property. *See* Def.'s Ex. B. While their purported objective may have been to retain the El Brazo house, this does not change the fact that they allegedly intended to cause injury in false imprisoning and defaming the In-Laws in order to realize this goal. *See Jane D.*, 32 Cal. App. 4th at 652–53.

allegations concerning the nature of the acts causing the contamination and the insured's state of mind). Likewise, in *Gonzalez v. Fire Ins. Exch.*, a California court of appeals found that coverage for allegations of false imprisonment and slander was not barred on account of an intentional acts exclusion. 234 Cal. App. 4th at 1239–40. There, while the claimant alleged that she was trapped in a room with the insured, who assaulted her, and that the insured slandered her in telling others she had consented to the sexual interaction, she also brought a claim of negligence against the insured. *Id.* at 1225. The court recognized that slander "does not require proof" of intent to cause harm and reasoned that the complaint left open the possibility that the insured caused injury negligently "in creating the conditions that led to [the claimant's] false imprisonment." *Id.* at 1239–40.

Here, the In-Laws' complaint is neither ambiguous about the intent involved nor alludes to potential negligence.[7] Critically, the In-Laws' allegations are neither "broad" nor leave open the "how," "when," or "why" the personal injuries at issue occurred. *Vann*, 39 Cal. App. 4th at 1615–17 (reasoning that coverage was possible because the complaint was vague and left many questions unanswered). Rather, as explained above, it painted a pointed and detailed picture of the Deens engaging in actions for the exclusive purpose of hurting their relatives in order to swindle them out of their house. *See generally* Def.'s Ex. B. Unlike in *Gonzalez*, there are no negligence claims raised here—nor could there be when the In-Laws alleged actions that by their very nature are inextricably intertwined with a specific and elaborate campaign designed to inflict injury. *Cf.* 234 Cal. App. 4th at 1225. Thus, the alleged facts of the complaint eliminate the possibility that the Deens falsely

---

[7] The Deens contend that there is a "possibility of coverage" given the fact that Federal changed its position on whether it had a duty to defend. *See* Dkt 59 at 4; *see also* Dkts. 24-18, 24-19, 24-21, 24-23. This argument is not persuasive. In providing its tentative position, Federal reserved the right to later assert defenses, which are recognized by the courts. *Val's Painting & Drywall, Inc. v. Allstate Ins. Co.*, 53 Cal. App. 3d 576, 586 (1975). Moreover, "it is well settled that the interpretation of an insurance policy is a legal rather than a factual determination," and thus, an insurer's admission that coverage may be available is "irrelevant" in making this determination. *Chatton v. Nat'l Union Fire Ins. Co.*, 10 Cal. App. 4th 846, 865 (1992). Accordingly, Federal's prior variance does not alter the Court's analysis here that coverage was not feasible due to the covered persons and dependents exclusion.

imprisoned or defamed the In-Laws negligently or recklessly.[8]  *Cf. id.* at 1239–40.  In order for the Deens to be eligible for coverage, the In-Laws would have to completely alter the factual foundation of the complaint.[9]  *All Green*, 22 Cal. App. 5th at 418.  Thus, the Court finds that Federal has met its burden as it has shown that its intentional acts exclusion bars coverage for the In-Laws' cross-complaint against the Deens.  *See id.* at 414.

For the above reasons, the Court finds that Federal has met its burden to prove that it did not have a duty to defend.  Accordingly, the Court grants in part Federal's motion for summary judgment and denies in part the Deens' motion for summary judgment as to Federal's duty to defend them in *Deen v. Deen*.

### 2. *Deen v. Fitzgerald Yap Kreditor LLP*

Next, the Court must assess whether the facts alleged in FYK's cross-complaint allow for the possibility that the Deens could have acted negligently or out of self-defense against their attorneys or whether these allegations inherently involved malintent.

The Court concludes that Federal has not met its burden to prove that FYK's allegations preclude the possibility that the Deens pursued their various litigation actions against FYK without the intent to cause harm.  *See generally* Def.'s Ex. G.  Although FYK

---

[8] The Deens insist that there is a possibility of coverage because the material facts of the underlying complaint are in dispute.  Dkt. 59.  However, the relevant disputes concern whether or not the Deens committed these acts—not the nature of their intent in executing these actions.  *See id.*  Even in light of the In-Laws' alleged recantation to the police, this would constitute a withdrawal of the allegations, not an amendment.  *See id.* at 7.  To reflect this different narrative, the In-Laws would have to completely alter the factual premise of their complaint.  *See All Green*, 22 Cal. App. 5th at 418.  Importantly, the Court's analysis does not turn on the truth of the allegations, but rather, on whether the allegations, when coupled with extrinsic evidence, allow for the possibility that the Deens could have executed these actions without malintent.  *See Allstate Ins. Co.*, 2010 WL 3619778, at *6.  Given that these allegations cannot be severed from the intent to hurt the In-Laws, the Deens have not established such a possibility.  *See Jane D.*, 32 Cal. App. 4th at 652–53.

[9] Critically, in coming to this determination, the Court passes no judgement on the merits or credibility of these allegations.  Rather, as the duty to defend does not turn on the truth of the allegations, but whether the allegations when coupled with extrinsic evidence potentially allow for coverage, the Court finds that coverage is barred given that the In-Laws' false imprisonment and defamation allegations against the Deens are inseparable from the Deens' purported intent to cause harm.  *See Allstate Ins. Co.*, 2010 WL 3619778, at *6.

alleged that the Deens "intend[ed] to cause harm to FYK and its attorneys" and "willfully" misused the judicial system by bringing their actions in "bad faith," it fails to allege facts that make it inconceivable that the Deens had other motives. *Id.* at 12, 17; *see Gray*, 65 Cal. 2d at 276. As seen in the below examples, FYK simply recited the procedural history of these actions without expanding on how or why these actions were in "bad faith": explaining that the Deens (1) filed for a Mandatory Fee Arbitration before the San Diego County Bar Association despite knowing that FYK's attorneys were not members; (2) filed for new a hearing by challenging the judge's neutrality and FYK's ethics; (3) filed a civil action without serving FYK's attorneys or notifying the state bar; and (4) filed for bankruptcy under Chapter 13, listing FYK as a creditor. *See* Def.'s Ex. G at 12–13. While FYK's complaint alludes to bad intentions, the facts pled by no means preclude the possibility of other motivations. *See All Green*, 22 Cal. App. 5th at 414. For example, the Deens conceivably could have acted out of incompetence and a genuine belief in the bias of the court and the merits of their case. As FYK's allegations concerning the "nature" of the Deens' lawsuits and their state of mind are not narrowly defined, they allow for the possibility that the Deens acted recklessly or at least without the intent to injure. *Vann*, 39 Cal. App. 4th at 1612–16; *see also KM*, 156 F. Supp. 3d at 1170.

Moreover, Isha's own complaint demonstrates that there is a conceivable theory in which the Deens acted out of self-defense. Def.'s Ex. F. In her complaint, Isha alleged that FYK breached its fiduciary duty to the Deens by committing malpractice, incurring unnecessary litigation costs, and falsifying expenses. *See id.* at 5–8. Accordingly, she asserted that she and Kevin had no other option but to bring multiple lawsuits to redress their injuries, report FYK's malfeasance to the bar, avoid bankruptcy, and to put an end to FYK's abuse of the legal system. *See id.* at 7–10. Therefore, the Deens' claims that they were acting in defense of their rights create a dispute of fact regarding their intentions. *See id.*; *Vann*, 39 Cal. App. 4th at 1615. Accordingly, as FYK's cross-complaint allows for the possibility that the Deens acted without the intent to cause injury, the intentional acts exclusion does not relieve Federal of its duty to defend. *See All Green*, 22 Cal. App. 5th

at 412–13.

This same reasoning applies to Federal's argument that Insurance Code Section 533 bars coverage here.  As explained above, California courts treat intentional acts exclusions in the same way they treat Insurance Code Section 533 as both exclude coverage for "willful act[s] of the insured."  *Delgado*, 47 Cal. 4th at 313.  For the reasons discussed above, Federal has failed to conclusively prove that the Deens' conduct here was intended to cause damage.  Thus, it is not relieved of its duty to defend on account of Section 533.

Given that FYK's crossclaims do not eliminate the possibility of coverage, Federal can only escape the duty to defend if it can point to undisputed extrinsic evidence that the Deens subjectively intended to cause FYK harm.  *See Vann*, 39 Cal. App. 4th at 1615.  Because Federal has not provided any extrinsic conclusive evidence proving the Deens' intent in bringing these legal actions, the Court finds that it has not met its burden to eliminate the possibility of coverage.

In conclusion, as Federal has failed to prove that its intentional acts exclusion would bar coverage for *Deen v. Fitzgerald Yap Kreditor LLP* in "all possible worlds," the Court finds that Federal had a duty to defend the Deens.  *Atl. Mut.*, 100 Cal. App. 4th at 1039.  Accordingly, the Court denies in part Federal's motion for summary judgment and grants in part the Deens' motion for summary judgment as to Federal's duty to defend the Deens in *Deen v. Fitzgerald Yap Kreditor*.

**B. Breach of Contract and of the Covenant of Good Faith and Fair Dealing**

Lastly, the Court must examine whether Federal has proven that the Deens' claims for breach of contract and breach of the covenant of good faith and fair dealing fails as a matter of law.

"Unreasonable delay in paying policy benefits or paying less than the amount due is actionable withholding of benefits which may constitute a breach of contract as well as bad faith giving rise to damages in tort."  *Intergulf Dev. LLC v. Superior Ct.*, 183 Cal. App. 4th 16, 20 (2010).  Accordingly, where an insurer has shown that there is "no potential for coverage and hence, no duty to defend under the terms of the policy" there can be no action

for breach of the contract and thus, no action for the "implied covenant of good faith and fair dealing." *Waller*, 11 Cal. 4th at 35.

With respect to *Deen v. Deen*, Federal has proven as a matter of law that it did not have a duty to defend the Deens against the In-Laws' cross-complaint. *See supra*, Section III.A.1. Federal has therefore proven by extension that it has not breached its contract with the Deens nor the covenant of good faith and fair dealing. *See Waller*, 11 Cal. 4th at 35. Regarding *Deen v. Fitzgerald Yap Kreditor*, Federal could not establish that the intentional acts exclusion barred coverage for the Deens. *See supra*, Section III.A.2. Therefore, by the same token, Federal has not met its burden to establish that it has neither breached its contractual duties to the Deens nor breached the covenant of good faith and fair dealing. *See Waller*, 11 Cal. 4th at 35. The Court therefore grants in part Federal's motion for summary judgment regarding the Deens' claims for breach of contract and breach of the covenant of good faith and fair dealing pursuant to *Deen v. Deen* and denies in part its motion for summary Judgment with respect to the Deens' claims for breach of contract and breach of the covenant of good faith and fair dealing pursuant to *Deen v. Fitzgerald Yap Kreditor*.

## IV. CONCLUSION

First, as the Court found that Federal did not have a duty to defend the Deens in *Deen v. Deen*, the Court GRANTS IN PART Federal's motion for summary judgment and DENIES IN PART the Deens' motion for summary judgment. Second, because the Court determined that Federal did have a duty to defend the Deens in *Deen v. Fitzgerald Yap Kreditor*, the Court DENIES IN PART Federal's motion for summary judgment and GRANTS IN PART the Deens' motion for summary judgment. Third, as the Court found that Federal did not breach its contract with the Deens nor the covenant of good faith and fair dealing for failing to represent the Deens in *Deen v. Deen*, the Court GRANTS IN PART Federal's motion for summary judgment. Lastly, because the Court concluded that Federal failed to demonstrate as a matter of law that it neither breached its contract with the Deens nor breached the covenant of good faith and fair dealing for failing to represent

them in *Deen v. Fitzgerald Yap Kreditor*, the Court DENIES IN PART Federal's motion for summary judgment.

Coupled with the Court's earlier August 21, 2024 rulings, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion for summary judgment, Dkt. 24, and GRANTS IN PART AND DENIES IN PART Federal's motion for summary judgment, Dkt. 23.

**IT IS SO ORDERED.**

Dated:  September 30, 2024

_____

Honorable Jinsook Ohta
United States District Judge

23-cv-00717-JO-SBC